**SWIFT et al. v. HOFFER et al.**

No. 2272.

District Court, W. D. Pennsylvania.

March 1, 1943.

James P. McArdle and Harry J. Nesbit, both of Pittsburgh, Pa., for plaintiff.

Sherriff, Lindsay, Weis & Hutchinson, of Pittsburgh, Pa., for defendant Paul Keslar.

Carl W. Brueck, of Pittsburgh, Pa., for defendant Otha Hoffer.

SCHOONMAKER, District Judge.

This is a personal injury case. Plaintiff was injured in an automobile collision involving an automobile driven by plaintiff David Swift, Jr., and two trucks,—one driven by defendant Hoffer and the other driven by defendant Keslar. The accident occurred on August 11, 1942, between seven and eight o'clock in the morning on Route No. 31 near Mt. Pleasant, Pa. The trial resulted in a verdict against defendants in the sum of $25,000. Both defendants have moved for judgment non obstante veredicto, or in lieu thereof for a new trial, on the grounds that the verdict is excessive and against the law and the evidence.

The evidence discloses that on August 11, 1942, during daylight hours, the parties involved were all proceeding west on Pennsylvania Route 31 toward Mr. Pleasant, Pa., on a winding down-grade of from seven to nine per cent. Defendant Keslar was in the lead, driving a Chevrolet truck loaded with mine props, which extended out over the back of the truck about three feet. Next came defendant Hoffer, also driving a Chevrolet truck loaded with mine props extending out over the back of the truck. Next came plaintiff Swift driving a Ford automobile owned by Henry N. Hamer, and in which vehicle Hamer and his wife were riding. The Swift car was following the Hoffer truck at about six hundred feet in the rear.

Keslar, the driver of the leading truck, then brought his truck to a stop on this down-grade at a point near the home of W. H. Dillinger, with his truck partly on the pavement and partly on the berm of the highway in order to carry on a conversation with Dillinger. Hoffer, the driver of the other truck, then turned his truck to the left to pass around the Keslar truck; but before he had completed the turn and had again entered into the right lane of traffic, his truck was struck in the rear by the automobile driven by the plaintiff Swift. There is a dispute in the testimony of the witnesses as to what caused this collision.

The plaintiff Swift testified that he first observed the two trucks going down this grade at a distance of about five or six hundred feet ahead; that he had the car in second gear; that he was traveling about thirty miles per hour; that he did not shorten the distance between his car and the trucks ahead until the leading truck (Keslar's) came to a stop on the highway; that he noticed this driver was talking with a man beside the road; that then the second truck (Hoffer's) passed the Keslar truck; that he followed the Hoffer truck around; that, as he got around the Keslar truck, following the Hoffer truck at a distance of about one hundred feet, it suddenly stopped in front, blocking the highway; that he applied the brakes, and at almost the same instant, his car was hit in the rear by the Keslar truck and knocked forward into the back of the truck ahead, forcing his car into the logs on the Hoffer truck and over the side; that his car then hit a guard-rail alongside the road and it went over into the ditch by the road, and when the car came to a stop, it was on its top with all four wheels in the air; that he was traveling about thirty miles per hour when the Hoffer truck came to an abrupt stop ahead of him; that he was about fifty feet or more behind the Hoffer truck; that the brakes on the car he was driving were functioning properly; that as he applied the brakes, his car was struck in the rear by the Keslar truck and his foot forced off the brake.

Henry N. Hamer, owner of the car plaintiff was driving, was sitting in the front seat at the time of the accident, and he corroborated Swift in his testimony as to the happening of the collision.

The defendant Hoffer testified that he was coming down this grade on Route 31 in low second gear between six and eight miles per hour going west; and that as he rounded a curve he first saw the Keslar truck ahead of him about six hundred feet; that Keslar checked up and stopped his truck with two wheels off on the berm of the highway and was talking with Willard Dillinger; that he (Hoffer) then swung around Keslar passing at a speed of six to eight miles per hour; that when he was about two truck lengths ahead of the Keslar truck, his truck was struck in the rear by the car driven by Swift; that at this time he was not quite on the right side of the road; that he did not suddenly stop his truck (as testified to by Swift); and that the car Swift was driving struck the left rear corner of his load, hitting about three of the fourteen-foot posts he had on his truck, pushing them forward through the upright, making a couple of dinges in his cab.

Defendant Keslar testified that his truck was parked on the right-hand side of the highway, with the right wheels of his truck two feet off the pavement on the berm of the road; that he was talking with witness Dillinger when the Swift car passed his truck; that his truck did not move from the parked position and did not strike the Swift car in the rear; that the Swift car hit the left side of the Hoffer truck and upset.

Witness Dillinger testified that he was talking with Keslar at his parked truck when the Hoffer truck passed the Keslar truck on a speed of six to eight miles per hour; that when the Hoffer truck was forty to fifty feet ahead of the Keslar truck it was hit on the left rear by the Swift car; and that the Hoffer truck was almost back on the right side of the road when the collision took place; and that it did not stop before it was hit by the Swift car.

■ Under this testimony, there was an issue of fact for the jury. If the collision occurred the way Swift and Hamer testified it did, then there was evidence from which the jury might find that the negligence of these two defendants caused the collision. If the collision occurred the way Keslar, Hoffer, and Dillinger testified it did, then there was no negligence on the part of Hoffer or Keslar, which would justify a verdict.

■ It is hard for me to believe that the accident occurred the way Swift and Hamer said it did; but that belief would not have justified a directed verdict for de-

fendants. This is not a case for application of the incontrovertible-fact rule. We cannot say it was impossible for the collision to occur just the way plaintiff and his witness Hamer testified, although it seems improbable that it did so occur.

As to the amount of the verdict, $25,000, it seems rather high. However, we cannot find that it is excessive. The plaintiff Swift lost a leg, and while he may be able to secure an artificial limb, we cannot say it is so excessive as to justify a new trial, when you consider that Swift will be excluded from many possible lucrative occupations by reason of his physical handicap.

The motion of each defendant for judgment non obstante veredicto and for a new trial will be denied. An order may be submitted accordingly on notice to opposing counsel.